

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

―――――――――――――――――――――――――――――――――――――――――

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 38th Floor*
*New York, New York 10278*

November 7, 2025

**BY ECF**

The Honorable Lewis J. Liman
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

  **Re:**  ***United States v. Raquel Moura Borges*, 21 Cr. 172 (LJL)**

Dear Judge Liman:

  The Government respectfully submits this memorandum in advance of the November 14, 2025 sentencing for defendant Raquel Moura Borges.

  The defendant, an investment adviser, defrauded her clients of millions of dollars they trusted her to invest. The defendant instead misappropriated client funds and diverted them to her own personal benefit. The defendant's fraud was straightforward, brazen, and dishonest. For the reasons set forth below, the Government respectfully submits that, balancing the nature and seriousness of the offense and the need for specific deterrence against the defendant's acceptance of responsibility and her personal circumstances, a below-Guidelines sentence of 30-37 months' imprisonment would be sufficient but not greater than necessary to achieve the purposes of sentencing.

## I. Background

### A. The Offense Conduct

  From at least 2016 through 2018, Raquel Moura Borges, through her Manhattan-based investment advisory company, Global Access Investment Advisors LLC, misappropriated millions of dollars in client funds. The defendant defrauded her clients through phony documents and lies about investing in so-called "private placements," while secretly misdirecting those funds to herself and others, money she used, among other things, to pay for interior decorating for her Manhattan apartment. (PSR ¶¶ 15-17).

  At her plea hearing, consistent with the parties' plea agreement, Borges admitted to defrauding one client in particular, referred to in the Indictment as Victim-1, out of $2.7 million. That client, a national of Brazil, like Borges, invested $2.7 million with Borges on her representation that it would be invested in a private placement in a particular Brazilian company on his behalf. (PSR ¶ 16). Borges instead diverted that $2.7 million to bank accounts controlled by Borges or her associates, none of which were invested as Borges promised. (PSR ¶ 17). Borges

subsequently emailed Victim-1 doctored bank statements that falsely purported to show Victim-1's $2.7 million invested in the private placement. (PSR ¶ 18). That lost $2.7 million is the basis for the defendant's Guidelines calculation and restitution obligation. (PSR ¶ 20).

The Indictment also alleges that the defendant defrauded a second victim, Victim-2, out of an additional approximately $2 million. (Indictment ¶¶ 15-18). Victim-2, through counsel, submitted a victim impact statement to Probation, which refers to the broader civil complaint against the defendant (PSR ¶ 40). The defendant's plea does not incorporate these victims in the criminal case, but the Government notes that, under the plea agreement, the defendant has agreed to disgorge $13 million in the parallel civil case filed the Securities and Exchange Commission, 20 Civ. 10051 (GBD); *accord* Def. Br. at 3 (defendant admitting that Victim-1 was "not the only time she engaged in financial improprieties"). Accordingly, while the Court need not resolve any factual disputes regarding victims other than Victim-1, the defendant's offense conduct can be weighed against this broader context of recurring impropriety. In short, this was not a one-time mistake.

After her guilty plea, the defendant submitted a series of objections to the Probation Department that appeared to minimize her conduct, and most troublingly to the Government, included what appeared to be doctored bank documents that suggested someone other than the defendant opened one of the relevant bank accounts used to defraud Victim-1 (PSR at 27-29). After new counsel was appointed for the defendant, the defendant retracted those objections and submissions and agreed that her conduct was not limited to Victim-1. She states in her sentencing submission that she was "confused about the purposes of her presentence report and filed objections to the report that were not relevant." (Def. Br. at 3).

## B.   The Defendant's Plea, Guidelines Range, and Forfeiture

On March 10, 2021, the defendant was charged by indictment (the "Indictment") in three counts: one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff (Count One), one count of wire fraud, in violation of 18 U.S.C. § 1343 (Count Two), and one count of investment adviser fraud, in violation of 15 U.S.C. §§ 80b-6 and 80b-17 (Count Three). On July 27, 2022, the defendant was arrested, arraigned before Magistrate Judge Netburn, and released on bond. On September 10, 2024, the defendant pled guilty, pursuant to a plea agreement, to investment adviser fraud, as charged in Count Three of the Indictment. (PSR ¶ 6.)

As agreed to by the parties, and as calculated by the Probation Office, the Stipulated Guidelines Range is 46 to 57 months' imprisonment. (PSR ¶¶ 7(i), 71). Pursuant to the parties' plea agreement, the Government agreed to recommend a sentence of between 30 to 37 months' imprisonment. (PSR ¶ 7(n)). Probation recommends the defendant be sentenced to a bottom-of-the-Guidelines sentence of 46 months' imprisonment. (PSR at 31). As set forth in the Plea Agreement, and pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the Government is not seeking forfeiture, but seeks restitution in the amount of $2.7 million, payable to Victim-1 (PSR ¶ 21).

## II.   The Sentencing Guidelines and Section 3553(a) Factors

The Sentencing Guidelines promote the "basic aim" of "ensuring similar sentences for those who have committed similar crimes in similar ways," *United States v. Booker*, 543 U.S. 220, 252 (2005), and so "to secure nationwide consistency, the [Sentencing] Guidelines should be the starting point and the initial benchmark," *Gall v. United States*, 552 U.S. 38, 49 (2007). Along with the Guidelines, the other factors set forth in Title 18, United States Code, Section 3553(a) must be considered. Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

Section 3553(a) further directs the Court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

## III.   The Court Should Impose a Significant, But Below-Guidelines Sentence

The Government respectfully submits that a sentence of imprisonment below the Stipulated Guidelines Range of 46-57 months' imprisonment, within the range of 30-37 months' imprisonment, would be sufficient but not greater than necessary under the relevant Section 3553(a) factors.

### A.   A Significant Incarceratory Sentence is Necessary in Light of the Nature and Seriousness of the Offense, the Need to Promote Respect for the Law, and the Need to Provide Just Punishment

A significant incarceratory sentence, albeit one below the Stipulated Guidelines Sentence, is necessary in light of the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(1) & 3553(a)(2)(A).

The defendant defrauded her clients who trusted her to uphold her fiduciary duties as an investment adviser and make appropriate investments on their behalf. She told Victim-1 that she was investing his $2.7 million in a private placement on his behalf, but the investment was a sham. Not only did the defendant misappropriate millions of dollars from her client, she diverted it to her own personal use, to spend on interior decorating for a Manhattan apartment (an apartment she paid for in part by funds obtained from Victim-2). And to cover up her crime, she altered bank documents to trick Victim-1 into thinking his money had been invested as the defendant promised.

In light of the seriousness of the offense and the harm it caused, a punishment that is just and commensurate with the defendant's conduct is required.

B.  **Deterrence Warrants a Significant Incarceratory Sentence**

Both general and specific deterrence further support the imposition of a significant incarceratory sentence.

The Court's sentence must specifically deter Borges from committing additional criminal activity. In particular, notwithstanding the defendant's disavowal of her prior objections to the Presentence Report, the fact that she submitted forged bank documents to an arm of the Court suggests she has not been deterred from continuing to engage in deceptive conduct to advance her interests. To be sure, the deception Borges made to Probation—regarding who opened a bank account Borges used to defraud Victim-1—appears to be entirely immaterial to the Court's consideration of the appropriate sentence. This bank account issue appears related to part of Borges's broader complaints about her relationship with Victim-2 and civil litigation related to that victim. And, as noted, the defendant has retracted those objections and submissions and appears to be accepting responsibility for her conduct. But the fact that she would submit false documents to Probation suggests that a significant incarceratory sentence is necessary and appropriate to specifically deter Borges from continuing to deceive people in an effort to advance her own personal interests.

General deterrence is also important here. *See* 18 U.S.C. § 3553(a)(2)(B). The Second Circuit and courts in this district have noted the appropriateness of significant sentences in the context of investment adviser crimes, *see United States v. Nicholson*, 638 F. App'x 40, 42-43 (2d Cir. 2016) (affirming 40-year sentence as reasonable), which is reflected, for example, in the four-level Guidelines enhancement for committing the offense while acting as an investment adviser. U.S.S.G. § 2B1.1(b)(20)(A)(iii). And, as the Eleventh Circuit has noted, in passing the Sentencing Reform Act, "Congress was especially concerned that prior to the Sentencing Guidelines, [m]ajor white collar criminals often [were] sentenced to small fines and little or no imprisonment. Unfortunately, this creates the impression that certain offenses are punishable only by a small fine that can be written off as a cost of doing business." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006); *see also id.* ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.").

For those reasons, it is important here to impose a sentence that will deter future investment adviser fraud. While a "relatively modest prison term" may be sufficient in some cases, non-

incarceratory sentences like the home-confinement requested by the defendant "totally fail to send this message." *United States Gupta*, 904 F. Supp. 2d 349, 355 (S.D.N.Y. 2012), *aff'd*, 747 F.3d 111 (2d Cir. 2014). The potential messages that could be inferred from this case, depending on the sentence, illustrate the point. If, on the one hand, Borges is sentenced to a term of incarceration, and one commensurate with the defendant's conduct, it will send a message to other individuals engaged in investment adviser fraud that knowingly and willfully stealing client money will result in prison time. But, on the other hand, a noncustodial or brief sentence may result in the wrong message: that this breach of a client's trust and harm are not serious or, even worse, that wealthy individuals are able to reap the benefits of their crimes and connections and escape meaningful consequences.

### C.  A Significant Incarceratory Sentence is Also Necessary to Avoid Unwarranted Sentencing Disparities

Relative culpability and the defendant's personal characteristics also warrant a substantial incarceratory sentence, albeit one below the Guidelines range. "In imposing a sentence, the district court is required to consider, among other things, 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008) (quoting 18 U.S.C. § 3553(a)(6)). As the Second Circuit has repeatedly observed, however, sentencing disparities are not "unwarranted" where defendants are not "similarly situated." *United States v. Wills*, 476 F.3d 103, 109-10 (2d Cir. 2007).

Here, when comparing the defendant's case to other investment adviser fraud defendants in this District, the need to avoid unwarranted sentencing disparities requires the imposition of an incarceratory sentence. Defendants who defraud their investment advisory clients are generally sentenced to prison. *See, e.g.*, *United States v. Chalk*, No. 21 Cr. 49 (ALC) (S.D.N.Y.) (thirty-six month sentence for defrauding victims of $4.8 million); *United States v. Abarbanel*, No. 21 Cr. 532 (LAK) (S.D.N.Y.) (forty-eight month sentence for defrauding investors of $100 million); *United States v. Bell*, No. 19 Cr. 550 (NSR) (S.D.N.Y.) (80-month sentence for defrauding investors of $11 million); *United States v. Ruiz*, No. 21 Cr. 695 (VSB) (S.D.N.Y.) (72-month sentence for defrauding investors of $8 million).

Some of the defendant's personal characteristics militate towards leniency. As the defendant's submission notes, she is the single parent to two college-aged daughters and is their sole source of support, and she appears to be struggling with significant physical and mental health challenges. (PSR ¶ 52; Def. Br. at 6-7). But, while the Government believes those factors should be reflected in a below-Guidelines sentence, as the Government agreed to advocate for in the parties' plea agreement, these efforts do not outweigh the other Section 3553(a) factors in counseling towards a still substantial incarceratory sentence.

**IV.  Conclusion**

       For the reasons set forth above, the Government respectfully submits that a below-Guidelines sentence of 30-37 months' imprisonment would be sufficient but not greater than necessary to comply with the purposes of sentencing.

       Respectfully submitted,

       JAY CLAYTON
       United States Attorney

by: _____/s/_____
       Matthew R. Shahabian
       Assistant United States Attorney
       (212) 637-1046